**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **KIRA, INC.** | § | |
| | § | |
| **v.** | § | **A-03-CA-950 LY** |
| | § | |
| **ALL STAR MAINTENANCE, et al.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are the following dispositive motions, referred by the District Court:

(1)    Defendants' Motion for Summary Judgment and Brief in Support, filed May
       16, 2006 (Clerk's Doc. Nos. 97 & 98);

(2)    Plaintiff's Objections to Defendants' Summary Judgment Evidence (attached
       as Appendix 3 to Plaintiff's Response to Defendants' Motion for Summary
       Judgment, Clerk's Doc. No. 106);[1] and

(3)    Plaintiff's Motion for Partial Summary Judgment, filed May 16, 2006
       (Clerk's Doc. No. 100).

as well as the (seemingly never-ending) responses, replies, sur-replies, supplements, and other

pleadings related to these motions.

On June 7, 2006, the District Court referred the motions to the undersigned Magistrate Judge

for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil

Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for

the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate

---

[1]Ideally, such objections should be filed as a separate pleading not an appendix, or included
with the response.

Judges. After reviewing the parties' briefs, relevant case law, as well as the entire case file, the undersigned issues the following Report and Recommendation to the District Court.[2]

## I. BACKGROUND

In 1998, Defendants All Star Maintenance, Inc. ("Maintenance"), Sundt•Actus•Bland Company ("SAB"), and Plaintiff Kira, Inc. ("Kira") formed All Star Management, L.L.C. ("the Company"). The company was created as a limited-liability corporation under Nevada law to provide maintenance services for privatized military housing projects at Fort Hood, Texas and other locations.[3] *See* Third Amended Verified Complaint, ¶¶10-12. Ownership of the Company is divided among three members, with Maintenance and SAB each holding a forty-five percent interest and Kira holding a ten-percent interest. *Id.* at ¶¶ 2-4. The three members signed an Operating Agreement on January 18, 1999. *Id.* at ¶13. The Operating Agreement provides that there will be one manager, which, since the inception of the Company has been Maintenance. *Id.* at ¶14.

On November 29, 2001, Maintenance and SAB organized All Star Management-Delaware ("Management-Delaware"), which uses the All Star Management name and provides the same services as the Company in the same interstate channels of trade. *Id.* at ¶23. Kira alleges that as of

---

[2]The parties requested that the Court permit oral argument on these motions. The Court denied that request, for two reasons. First, this case is scheduled for a final pretrial conference in late August, with trial in September. In order to complete the instant Report & Recommendation sufficiently in advance of the final pretrial conference for the Report to be useful to the District Judge and parties, it was not possible to have oral argument. Further, given the parties' apparent penchant for never-ending arguments, as demonstrated in the briefing on the motions before the Court (which could easily fill a file drawer by itself), the Court had serious doubts that it would be able to complete a hearing prior to the September trial date.

[3]Mr. Junge started All Star Management Corporation in September of 1998 and gave permission for Maintenance, SAB, and Kira to file Articles of Organization of All Star Management, LLC in November of 1998. *See* Defendants' Appendix Relative to Brief in Support of Their Motion for Summary Judgment, Appendix C, Exhibits 2 and 3.

September 30, 2003, Maintenance and SAB had improperly taken $1,250,000 in management fees

from the Company and had used the Company's assets to benefit and further their own interests,

instead of benefitting and furthering the interests of the Company and all of its members. *Id.* at ¶¶20-

22. Kira asserts that it never agreed that Maintenance and SAB could use the name and the mark

"All Star Management" for purposes unrelated to the Company's business. *Id.* at ¶25. Kira also

asserts that the Company's good will has been damaged by Management-Delaware using its name

and mark. *Id.* at ¶¶26-27. Upon learning of the alleged misuse of management fees and formation

of the company with the same name, Kira contacted Maintenance. *Id.* at ¶30. Kira asserts that

Maintenance refused to provide Kira with all of the relevant information regarding payment of

management fees, did not admit that it had used the Company's assets for an improper purpose,

refused to provide Kira with accurate information about the Company's capital accounts, and would

not take any action regarding its allegedly wrongful use of the Company's assets. *Id.*

On December 31, 2003, Kira filed this lawsuit. On February 25, 2004, Kira amended its

complaint, alleging breach of contract, breach of the implied covenant of good faith and fair dealing,

breach of fiduciary duty, civil conspiracy, and derivative claims for breach of fiduciary duty, gross

negligence, mismanagement, waste of company assets, violations of the Lanham Act, unfair

competition, tortious interference with prospective business relationship pursuant to Nev. Rev. Stat.

§§ 86.483 - 86.489, and unfair competition pursuant to Hawaii Revised Statute § 480-2, *et seq*., and

unfair competition pursuant to South Carolina Unfair Trade Practices Act, S.C. Code § 39-5-20, *et

seq*. On March 29, 2004, Defendants answered and asserted affirmative defenses.

On March 30, 2005, the District Court issued an order dismissing all of Kira's derivative

claims except for those against Maintenance. As a result, Kira filed a Second Amended Verified

Complaint on May 2, 2005, claiming breach of contract, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, civil conspiracy, and derivative claims against Maintenance for breach of fiduciary duty, gross negligence, mismanagement, waste of company assets pursuant to Nev. Rev. Stat. §§ 86.483 - 86.489, federal service mark infringement, false designation of origin, false description, and false representation under the Lanham Act and common law unfair competition.  Kira seeks damages and a permanent injunction, enjoining Maintenance from using the mark "All Star Management" other than to benefit the Company.  In Kira's Third Amended Verified Complaint filed on January 31, 2006, Kira clarifies that it is seeking restitution damages in the form of forfeiture or disgorgement.  The District Court denied Kira's Motion for Leave to file Fourth Amended Complaint on May 11, 2006, stating that it was untimely under the Scheduling Order and would prejudice Defendants.

In their Motion for Summary Judgment, Defendants argue that since each member expressly waived its rights and claims "arising as a result of any business activity that might be in direct or indirect competition with the Company," Kira has waived every direct claim that is unrelated to payment of fees.  Maintenance and SAB argue that they did not breach the contract and that Kira cannot establish that it sustained any direct damages.  Kira asserts that judicial estoppel operates to bar Maintenance and SAB from arguing that Kira can only establish derivative damages.  Kira argues that summary judgment should not be granted because Maintenance and SAB breached the Operating Agreement by the wrongful payment of management fees as a matter of law based on the language of the Operating Agreement and that there is a genuine issue of material fact regarding the damages it suffered.  Maintenance and SAB also assert that they did not breach the Operating Agreement by improperly using company assets.

Maintenance and SAB also argue that they had no fiduciary duty to Kira, and even if they did they did not breach that duty.  Maintenance argues that Kira does not have a claim under the Lanham Act because one licensee cannot make a claim against another if the owner of the mark has authorized both parties to use it.  Kira disputes this.

In the alternative, Kira argues that consideration of the motion for summary judgment should be deferred pursuant to Rule 56(f) because Defendants have not allowed them to depose three witnesses and have not produced relevant documents.  Defendants argue that Rule 56(f) does not apply here because Kira has not exercised due diligence in discovery.

Kira also argues in its own motion for summary judgment that it is entitled to summary judgment on the contract claim because the fact that Maintenance and SAB paid themselves management fees without Kira's agreement breached the Operating Agreement as a matter of law.  Maintenance and SAB assert that Kira's motion should be denied because their actions did not breach the Operating Agreement and Kira cannot demonstrate any direct damage.

## II.  ANALYSIS

### A.     Standard of Review

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  When the party seeking summary judgment is seeking summary judgment on a claim for which the non-moving party would bear the burden of proof at trial, the party seeking summary judgment bears the burden of showing that there is an absence of evidence to support the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317,

324 (1986); *Coleman v. Houston Independent School District*, 113 F.3d 528, 533 (5th Cir. 1997). The party can do this by (1) submitting summary judgment evidence that negates the existence of a material element of the opposing party's claim or (2) by showing there is no evidence to support an essential element of the opposing party's claim. *Celtotex*, 477 U.S. 322-25. After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

The Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor. *Coleman*, 113 F.3d at 533. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue of material fact is presented, and summary judgment is inappropriate. Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a proper motion for summary judgment. *Duffy v. Leading Edge Products, Inc,.*44 F.3d 308, 312 (5th Cir. 1995). Rather, the non-moving party must set forth specific facts showing the existence of a "genuine" issue concerning every essential component of its case. *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir. 1997). The standard of review "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990)(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Applying these standards, the Court turns first to the objections to the summary judgment evidence and then to the merits of the motions for summary judgment.

**B.**     **Objections to Summary Judgment Evidence**

In the Appendix to Kira's Response to the Defendants' Motion for Summary Judgment, Kira includes a pleading entitled "Objections to Defendants' Summary Judgment Evidence." *See* Appendix 3 to Clerk's Doc. No. 106.  In the Objections, Kira attempts to bar consideration of huge chunks of the declarations of Junge and Bland.  The manner in which the objections are made is less than ideal.  Kira repeats entire paragraphs of the declarations, and then states in conclusory fashion a string of objections (such as "Conclusory Statement," "Hearsay," "Unsubstantiated assertion," Improper interpretation of an agreement," or "Lack of personal knowledge").  This shotgun approach is not a proper manner in which to make objections to summary judgment evidence.  It essentially leaves it to the Court to guess which sentence of the allegedly offending paragraph suffers from which of the numerous flaws listed in the string objection.  The Court will not engage in this sort of analysis, particularly given the sheer volume of evidence and briefing that has been submitted on the motions before it.[4]

Having said this, the Court notes that in general the objections appear to be meritless.  Rule 56(e) provides that "supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Assertions that are unsubstantiated are not competent summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert.*

---

[4]In its Reply, Kira also attacks the declarations as "sham affidavits" because they allegedly attempt to create an issue of fact to defeat summary judgment by submitting testimony contradicting the witnesses' prior deposition testimony. *See, e.g., Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991); *Reilly v. TXU Corp.*, 230 F.R.D. 486, 488 n.1 (N.D. Tex. 2005).  Kira first makes this objection in its reply, so it is untimely.  Regardless, the objection has no merit, as the Court finds nothing in the affidavits that so directly contradicts the prior depositions as to merit striking the affidavits as "shams.".

*denied*, *Forsyth v. Vines*, 513 U.S. 871 (1994).  The proper way to attack evidence is with a motion

to strike making *specific* objections.  *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 506 (5th Cir.

1999), *superseded by statute on other grounds as noted in*, *Mathis v. Exxon Corp.*, 302 F.3d 448,

459 n.16 (5th Cir. 2002).

The declarations are plainly made on personal knowledge.  In the first paragraph of Bland's

declaration, he states that he has personal knowledge of the facts stated in the declaration, that the

facts stated there are true and correct, and that he is president of SAB.  *See* Defendants' Appendix

in Support of Their Motion for Summary Judgment, Appendix B.  Junge also states that he has

personal knowledge of the facts included in his declaration, the facts are true and correct; and he is

president of Maintenance, Champions, and a number of affiliated companies.  *Id.*, Appendix C.

Relying on a Fifth Circuit case, Plaintiff argues that the affidavits are "riddled" with statements

clearly not within the personal knowledge of the affiants.  In the cited case, however, the court

disregarded affidavit testimony in which the affiants were relating that a non-affiliated third party

told the witnesses who the manufacturer was of a part for a car.  *Cormier v. Pennzoil Exploration*

*& Production Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992).  The affiants in *Cormier* were testifying

regarding information that one would not expect to be within their personal knowledge, because

neither of them were involved with manufacturing the car part.  In this case, Bland and Junge are

testifying regarding the nature of their businesses and events about which they would logically have

knowledge as the heads of their respective companies.  Thus, both Bland and Junge established that

they have personal knowledge to give declarations regarding their business and are competent to

testify regarding these matters.

As for the admissibility of the evidence, none of the complained of statements draw any conclusions as to ultimate questions. Kira complains that the agreements referenced by Bland and Junge speak for themselves, however, that does not serve to invalidate their testimony, but merely provides additional evidence for the Court to consider. Certainly, the Court will construe the contracts pursuant to Nevada law, and any testimony regarding the meaning of contract terms will be considered accordingly. Kira also asserts that testifying as to agreements between the affiant and others is hearsay. The Court disagrees, as the existence of an agreement is something that is clearly within the affiant's personal knowledge and the testimony would only be hearsay if it reported statements of a non-party to the affiant.

For these reasons, the Court overrules Kira's objections to the Defendants' summary judgment evidence.

## C.    Choice of Law

A federal court exercising diversity jurisdiction applies state substantive law to a plaintiff's state law claims. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938). Likewise, a court exercising jurisdiction supplemental to its federal question jurisdiction (under 28 U.S.C. § 1367) applies the choice of law rules of the forum state. *In re Combustion, Inc.*, 960 F.Supp. 1056, 1059 (W.D. La. 1997); *Dale v. Ala Acquisitions I, Inc.*, 2006 WL 1520289, at *2 (S.D. Miss. May 26, 2006). Accordingly, regardless of the basis of the Court's jurisdiction, the Court must apply the Texas choice of law rules to determine which state's law applies to the state law claims in this case.[5]

_____

[5]When filed, this suit alleged that the Court had jurisdiction over this case pursuant to the diversity of the parties. *See* Original Verified Complaint at ¶ 6 (Clerk's Doc. 1). In the First Amended Verified Complaint, this jurisdictional statement was amended to allege not only diversity jurisdiction, but also federal question jurisdiction due to the Lanham Act claim, and supplemental jurisdiction under 28 U.S.C. §§ 1338(b) and 1367. *See* First Amended Verified Complaint at ¶ 7 (Clerk's Doc. No. 2). In the Second Amended Complaint, the claim of diversity jurisdiction

9

As a threshold issue, a federal court sitting in diversity jurisdiction must first decide which state's substantive law to apply. *See, e.g., R. R. Mgmt. Co., L.L.C. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005). Generally, in a diversity case, a federal court applies the substantive law of the state in which it sits, including that state's choice of law analysis. *See, e.g., Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). When determining which state's law to apply, Texas courts use the most significant relationship choice of law analysis that is outlined in the Restatement (Second) of Conflict of Laws. *R. R. Mgmt. Co., L.L.C.*, 428 F.3d 214, 222 (5th Cir. 2005); *see* Restatement (Second) of Conflict of Laws (1971).

Texas law gives effect to choice of law provisions regarding contract construction. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir. 2003). However, a contractual choice of law clause does not cover the extra-contractual portions of a parties' relationship.[6] *Id. See also, Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 433 (Tex. 1999). The Operating Agreement in this case states that it "shall be construed and enforced in accordance with the laws of Nevada." *See* Defendant's Motion for Summary Judgment, Appendix B, Exhibit 1, §15.6. Additionally, the Operating Agreement provides that it "shall govern, even when inconsistent

---

disappeared, notwithstanding that nothing in the motion for leave to file the second amended Complaint stated that a change in the jurisdictional basis for the suit was being changed by the amendment. *See* Second Amended Verified Complaint at ¶ 6 (Clerk's Doc. No. 59). The jurisdictional statement is identical in the Third Amended Verified Complaint. *See* Clerk's Doc. No. 74. Notwithstanding the lack of mention of diversity jurisdiction in the current live pleading, it appears on the face of that complaint that the parties are in fact of diverse citizenship, and that there is $75,000 in controversy. Despite calling this to the Plaintiff's attention in the order requiring choice of law briefing, Plaintiff has remained silent regarding its position on the basis for the Court's jurisdiction. Thus, it is unclear whether this case is before the Court pursuant to its diversity jurisdiction, its federal question and supplemental jurisdiction, or both.

[6]This is true, despite Defendants' insistence otherwise, because the Court looks to Texas' – not Nevada's – choice of law rules in determining which state's law to apply to this case.

with, or different from, the provisions of the Act or any other law or rule." *Id.* at §2.2.  In Texas, unambiguous contracts should be enforced as written, looking at the intent of the parties as shown by the language used. *Sulzer Carbomedics v. Or. Cardio-Devices, Inc.*, 257 F/3d 449, 457 (5th Cir. 2001).  Additionally, Texas follows the internal affairs doctrine, which provides  that the law of the state of incorporation applies to determine the "rights, powers, and duties of [the] board of directors and shareholders and matters relating to its shares." TEX. BUS. CORP. ACT, Art. 8.02; *Hollis v. Hill*, 232 F.3d 460, 464-65 (5th Cir. 2000).

Because it was less than clear that Nevada law should govern all of the claims in this case, on June 16, 2006, the Court ordered that the parties brief that issue. *See* Clerk's Doc. No. 114.  In response, Defendants filed a very unhelpful brief, barely addressing the issue.  Defendants repeated their claim that the contractual choice of law clause mandates that Nevada law applies to all of the claims in the case.  The only argument in that brief on point is contained in a footnote, in which Defendants assert (without citation) that the state bearing the most significant relationship to the claims in this case is Texas, and then contend that they are unaware of any conflict between the law of Texas and Nevada on the claims at issue in this case.  Defendants' Brief Regarding Choice of Law at 3 n.1 (Clerk's Doc. No. 125).[7]  For its part, Plaintiff's choice of law brief argues that Nevada law applies to all of the claims in the case (and it actually cites case law to support this claim).

In short, although neither party has provided a detailed analysis of the issue, it is the position of both parties that Nevada law should apply to this case.  Given the parties' agreement, the Court need not make a complete conflicts of laws analysis, but rather may adopt the parties' position on the issue. *See Zicherman v. Korean Air Lines Co.*, 516 U.S. 217, 228-29 (1996) (noting that court

---

[7]In their briefing, Defendants rely primarily on Nevada law, although at times they cite Texas cases as well.

need not conduct a choice of law analysis because the parties agreed on the law to be applied); *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 60 (2nd Cir. 2004), quoting, *Tehran-Berkeley Civil & Envtl. Eng'rs. v. Tippetts-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2nd Cir. 1989) (implied consent by the parties is sufficient to establish choice of law). Based on the parties' agreement, the contractual choice of law provision, and because the claims relate to the internal affairs of a Nevada limited liability company, the Court will apply Nevada law to the summary judgment motion.[8]

**D.   Direct Claims**

Maintenance and SAB argue that since each member expressly waived its rights and claims "arising as a result of any business activity that might be in direct or indirect competition with the Company," that Kira has waived every direct claim that is unrelated to payment of fees. *See* Defendants' Brief in Support of Their Motion for Summary Judgment, Appendix B, Exhibit 1.

**1.   Breach of Contract Claims**

Maintenance and SAB argue that they did not breach the contract and that Kira cannot establish that it sustained any direct damages. Thus, they argue that Kira's breach of contract claim fails as a matter of law. Kira asserts that judicial estoppel operates to bar Maintenance and SAB from arguing that Kira can only establish derivative damages. Kira argues that summary judgment should not be granted because Maintenance and SAB breached the Operating Agreement by the wrongful payment of management fees as a matter of law based on the language of the Operating Agreement and because there is a genuine issue of material fact regarding the damages it suffered. Kira also generally states that genuine issues of fact exist regarding Maintenance and SAB's other breaches of the Operating Agreement.

---

[8]Clearly federal law applies to the claim under the Lanham Act.

Kira asserts in its own motion for summary judgment that it is entitled to summary judgment because the fact that Maintenance and SAB paid themselves management fees without Kira's agreement breached the Operating Agreement as a matter of law.  Maintenance and SAB assert that Kira's motion should be denied because they did not breach the Operating Agreement and Kira cannot demonstrate any direct damage.

In a breach of contract action, the plaintiff must prove: (1) that a contract existed; (2) that the defendant breached the contract; and (3) that the breach was the proximate cause of the sustained damage.  *See Nevada Contract Servs. v. Squirrel Cos., Inc.*, 68 P.3d 896, 899 (Nev. 2003).[9]  A basic rule of contract interpretation is that every word shall be given meaning, if it is at all possible.  *Musser v. Bank of America*, 964 P.2d 51, 54 (Nev. 1998).  Further, a contract should not be interpreted in a way that makes any provision meaningless.  *Id.*  A contract is considered ambiguous "if it is reasonably susceptible to more than one interpretation."  *Shelton v. Shelton*, 78 P.3d 507, 510 (Nev. 2003), quoting *Margrave v. Dermody Props.*, 878 P.2d 291, 293 (Nev. 1994).  Whether or not a contract is ambiguous is a question of law for the court.  *Id.*  When a contract is ambiguous and extrinsic evidence is needed to ascertain the intention of the parties, summary judgment is inappropriate if the extrinsic evidence is conflicting.  *Id.*

### a.    Breach as It Relates to Management Fees

Maintenance asserts it was not paid any management fees and the only money transferred to it from the Company was pro rata distribution of profits.  Maintenance and SAB admit that the Company entered into contracts with SAB and Champions of the West for administrative and

---

[9]The Court is confounded by the fact that after the Defendants have vigorously argued that the Operating Agreement mandates that the contract is governed by Nevada law, they cite Texas law for the elements of breach of contract.  *See* Defendant's Brief at 9 (Clerk's Doc. No. 98).

management services to fulfill the contract with Actus Lend Lease.  However, they assert that all contracts formed and all the money paid under those contract was authorized by the Operating Agreement.  On the other hand, Kira argues that it is entitled to summary judgment on this claim because all of the members had to agree on any compensation to be paid to an affiliate, and Kira never agreed to the amount or payment of management fees.

The Operating Agreement in section 6.1 identifies three situations which require the consent of all of the members, which include amendments to the Articles or Operating Agreement, approval of the transfer of a member's interest, and the continuation of the business after dissolution.  It then states, "in all other matters in which a vote of the Members is required, a vote of a Majority of the Members shall be sufficient."  Section 6.6.3 of the Operating Agreement provides:

> The Members and the Manager agree that the Company may contract with an affiliate to perform various administrative functions for the Company.  That affiliate shall receive compensation for providing such services in an amount *agreed upon by the Members*.

Operating Agreement § 6.6.3.  An "affiliate" is defined as:

> (1) any Person directly or indirectly controlling, controlled by or under common control with another Person; (2) any Person owning or controlling ten percent (10%) or more of the outstanding voting securities of such other Person; and (3) if that other person is an officer, director, member or partner, any company for which such Person acts in any such capacity.

*Id.* at Article 1. Kira argues, based on the italicized language in section 6.6.3, and the fact that this section does not refer to a "vote of the members," that the compensation paid an affiliate must be agreed upon by *all* of the members, and not by a majority of the members.  On the other hand, based upon the "catch-all" phrase in section 6.1, and the lack of "payments to affiliates" being included in the list of actions requiring the consent of all members, Defendants argue that an agreement of the members is synonymous with a "vote of the members," and thus means a majority of the members.

14

**(1)     Section 6.6.3**

Champions is undeniably an affiliate; thus section 6.6.3 applies to payments to Champions. Maintenance and SAB argue that since a majority of the members (*i.e.* Maintenance and SAB) agreed on the compensation that Champions would receive, there was no breach of section 6.6.3. Kira argues that section 6.6.3 says nothing about a vote; instead, it says the amount of compensation shall be "agreed upon by the Members." While the Operating Agreement makes clear the procedure or requirements for a "vote of the members," nowhere does it explain a process for the members to "agree" upon something.

Maintenance and SAB also argue that they are not in breach of the contract because of the powers given to the manager. Section 7.3 of the Operating Agreement provides that the manager "has the power, on behalf of the Company, to do all things necessary, proper or convenient to carry out the business and affairs of the Company including, without limitation: . . . [n]egotiating and entering into contracts and guaranties." Section 7.3.11 authorizes the manager to pay "compensation or additional compensation to any or all Members and employees on account of services previously rendered to the Company, whether or not an agreement to pay such compensation was made before such services were rendered."

Even though the Operating Agreement clearly gives the manager the power to make contracts, this does not serve to make section 6.6.3's requirement of an agreement of the members regarding compensation inoperative. *See Musser*, 964 P.2d. at 54. Indeed, if this argument had merit, and the general managerial powers overrode the specific provisions of the affiliate contracting provision in section 6.6.3, there would be no need for section 6.6.3. Since the well-settled law is that where a specific and general provision apply to the same situation, the specific one controls, clearly

the powers given to the manager do not preempt the requirement of an agreement of the members

on the compensation paid to an affiliate. *See Nevada Power Co. v. Haggerty*, 989 P.2d 870, 877

(Nev. 1999).

Kira argues that the plain meaning of the term "agreed upon" means all parties to the

agreement concur on the issue, and it analogizes to the use of the term "agreed" in contracting, where

an agreement on a contract clearly requires all of the parties to the contract to concur.   Kira argues

that, similarly, an agreement of the members means all three members must concur.   Kira also asserts

that if the parties had intended that an agreement of the members only required a majority vote, the

contract would have stated so explicitly.   However, that argument goes both ways, since one could

also argue if the parties intended that the agreement contemplated in section 6.6.3 must be

unanimous they would have explicitly stated so, and included it in the list of items requiring a

unanimous agreement.   The fact that the Operating Agreement only delineated three situations where

unanimous consent is needed weighs against Kira's interpretation.

Since the Operating Agreement does not give an explanation of what it takes for the parties

to agree it is ambiguous.   Both parties' positions require that the Court imply language into the

disputed provision.   Kira interprets the phrase to mean "agreed upon *unanimously* by the members,"

while Defendants interpret it to mean "agreed upon by *a majority of* the members."   Unfortunately,

the contract merely states that payments to affiliates must be "agreed upon by the members."   Neither

of the parties' interpretations is unreasonable, and there is conflicting evidence regarding the parties'

intentions.   Summary judgment is therefore inappropriate on this issue.   *See Shelton*, 78 P.3d at

510.[10]

_____

[10]Although Kira is correct in asserting that where a contract is ambiguous, it will be construed
against the party who drafted the contract, summary judgment is not the appropriate forum for

**(2)    Section 6.6.2**

Kira also argues that Defendants' Motion for Summary Judgment should not be granted

because genuine issues of material fact exist regarding whether or not the "management fees" were

fair.  However, as Maintenance and SAB repeatedly point out, this argument was not pled in the

Third Amended Verified Complaint, so Kira cannot raise it for the first time in response to

Defendants' Motion for Summary Judgment.  Thus, summary judgment should be granted on this

portion of the breach of contract claim.

**(3)    SAB**

Kira also asserts that SAB is an "affiliate" as defined in the Operating Agreement, and thus

payments to SAB also required the agreement of the members.  As noted previously, the Operating

Agreement defines an affiliate as:

> (1) any Person directly or indirectly controlling, controlled by or under common
> control with another Person; (2) any Person owning or controlling ten percent (10%)
> or more of the outstanding voting securities of such other Person; and (3) if that other
> person is an officer, director, member or partner, any company for which such Person
> acts in any such capacity.

Operating Agreement at Article 1.  Maintenance and SAB assert that SAB is not an affiliate because

it does not meet sections (1) or (2) of the definition of an affiliate and because it would be

nonsensical for an entity to be both a member and an affiliate of a member, since it would make

sections 6.6.3 and 6.6.2 inconsistent.  As a result, they assert that Kira's motion should be denied

with respect to SAB.

Kira asserts that Maintenance and SAB have admitted that SAB is an affiliate by citing

section 6.6.3 in their Brief in Support of Their Motion for Summary Judgment and section 6.6.3 is

---

resolution of a disputed, ambiguous contract.  *See Williams v. Waldman*, 836 P.2d 614, 619 (Nev.
1992); *Shelton*, 78 P.3d at 510.

cited in a letter from an attorney for Defendants, explaining why the management fees were authorized by the Operating Agreement.  Kira argues that there are three different ways a person, including a company, can be an affiliate under the Operating Agreement and asserts that SAB is an affiliate under each section.  Kira also argues that contrary to what Maintenance and SAB argued, a company can be an affiliate and a member under the Operating Agreement at the same time.  Kira is incorrect in asserting that Maintenance and SAB admitted SAB was an affiliate by citing section 6.6.3 in their brief and letter.  While both the brief and the letter specifically note that Champions is an affiliate, they do not do the same with SAB.  Rather, the documents refer to sections of the Operating Agreement that allow a manager to make contracts and payments on behalf of the Company.  Defendants have not conceded that SAB is an affiliate under the terms of the Operating Agreement.

Further, Kira's interpretation of the Operating Agreement would make every member an affiliate.  Since the Operating Agreement provides different rules for payments to affiliates and transactions with members, and distinguishes between them, it would be illogical to consider a member to be both an affiliate as well as a member.  It is a basic rule of contract interpretation that every word in a contract shall be given meaning. *See Musser*, 964 P.2d at 54.  As Defendants note, section 6.6.2 provides rules regarding dealings between a member and the company, specifically providing that a "Member may lend money to and transact other business with the Company," and "[t]he rights and duties of a Member who . . . transacts business with the Company are the same as those of a person who is not a Member, subject to applicable law."  Section 6.6.3 creates a different standard for transactions between the Company and an affiliate by, as noted earlier, providing that the compensation paid an affiliate must be "agreed upon by the Members."  The Court therefore rejects Kira's interpretation of "affiliate" as applying to each member, and specifically as applying

to SAB.  Because SAB is not within the definition of an "affiliate," section 6.6.3 does not apply to

payments to it.  Accordingly, it would appear that the propriety of any such payments falls within

the provisions of section 6.6.2 of the Operating Agreement, which (as noted in the previous section)

is not within the scope of the claims contained in Kira's live pleadings.  Thus, summary judgment

on this claim should be granted for Defendants.

> **b.**     **Breach as It Relates to Use of Company Assets**

Maintenance and SAB argue that this claim should be dismissed because Kira has not

identified which part of the contract was breached by use of the Company's assets and also assert

that Kira has not identified which assets were improperly used.  Additionally, Maintenance and SAB

assert that there is no evidence that they used the Company's financial assets for their own benefit;

no evidence that the Company owned any confidential business information; none of the employees

that were used were exclusive assets of the Company; and the All Star name was not for the

Company's exclusive use.  Kira argues that Maintenance and SAB breached the contract by using

All Star Management's name, trademark, goodwill, and employees to solicit and obtain new business

for their company at the expense of Kira.  Kira asserts that section 6.6.1 does not waive this breach

of contract argument.

Section 6.6.1 provides:

> The Members and their respective partners, agents, employees and Affiliates may
> engage or invest in, independently or with others, any business activity of any type
> or description, including, without limitation, those that might be the same as or
> similar to the Company's business or that might be in direct or indirect competition
> with the Company.  Neither Company not any Member shall have any right or
> interest in or to such other ventures or activities or the income or proceeds derived
> therefrom.  The Members shall not be obligated to present any investment
> opportunity or prospective economic advantage to the Company, even if the
> opportunity is of the character that, if presented to the Company, could be taken by
> the Company.  The Members shall have the right to hold any investment opportunity
> or prospective economic advantage for their own account or to recommend such

opportunity to Persons other than the Company. Each Member acknowledges that the other Members and their respective Affiliates own and/or manage other businesses, including businesses that may compete with the Company and for the Members' time. Each Member hereby waived any and all right and claim which the Member may otherwise have against the other Member(s) and their respective partners, agents, employees and Affiliates as a result of any such activities. Each Member hereby warrants and represents to the other Member(s) that the Member understands and acknowledges that: (i) the Member is waiving what would otherwise be the fiduciary duty of a Member to bring business opportunities to the Company and, being informed of such waiver, the Member nevertheless voluntarily consents to the provisions of this Section 6.7.1; and (ii) the Company's business is intended to be limited to conducting the specific business purpose together with the general authority specific in Article 3.

Although Maintenance and SAB assert that there was no breach of contract concerning confidential business information, Kira does not mention confidential business information in its response, so the Court assumes Kira has abandoned this claim. Although Kira's arguments are under a breach of contract heading, its arguments relate primarily to unfair competition and trademark infringement. Kira states section 6.6.1 makes "no mention of Members being allowed to use All Star Management's assets, including its employees, for their sole benefit." However, the section states that the members and their employees may "engage or invest in, independently or with others, any business activity of any type or description, including, without limitation, those that might be the same as or similar to the Company's business or that might be in direct or indirect competition with the Company." Even though John Garcia testified that he was an employee of the Company for the entire time he was associated with the involved companies, the evidence shows that Champions assigned some employees, including John Garcia, to numerous All Star projects. *See* Defendant's Brief in Support of Its Motion for Summary Judgment, Appendix B, Bland Declaration. Although the employees were placed on the Company's payroll, Champions and Killeen All Star Construction Partners reimbursed the Company for these employees' incomes. *Id.* Thus, Kira has been unable

to refute Maintenance and SAB's assertion that there was no breach regarding use of the Company's employees.

Kira does not point to any provision in the Operating Agreement related to the All Star name or mark.  The evidence shows the first All Star company was started in 1985 and the All Star companies have performed under more than one hundred similar contracts all over the world.  *See* Defendant's Brief in Support of Its Motion for Summary Judgment, Appendix C, Junge Declaration. According to Defendants, Junge owns the trademark.  Since this company name and its numerous offshoots existed and were establishing goodwill for a long time before the Company was created, and the Operating Agreement make no mention of the use of the name or the mark, there has been no showing of a breach of contract by the use of the All Star name outside the Company.  Since Kira has been unable to refute Maintenance and SAB's argument that nothing in the Operating Agreement prevents the use of the Company's assets, goodwill, name, mark, and employees that occurred, the Court recommends that summary judgment be granted for Maintenance and SAB on this breach of contract claim.

### c.      Judicial Estoppel

Maintenance and SAB assert that summary judgment should be granted because Kira cannot establish that it suffered any direct damage.  However, Kira argues that Maintenance and SAB are judicially estopped from making this argument.  In response, Maintenance and SAB argue that they have not changed their position during this lawsuit.  They assert that the difference stems from the fact that earlier they were supposed to assume the allegations were true and now they are pointing out holes in Kira's case.

When a party assumes a position in a legal proceeding and convinces a court to accept that position, the party cannot later assume a contrary position, especially if that contrary position would

be detrimental to the opposing party. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). The purpose of the doctrine of judicial estoppel is to protect the integrity of the judicial process. *Id.* at 749-750. When considering whether judicial estoppel should be invoked the Court considers three factors: (1) whether the party's later position is clearly inconsistent with the previous one; (2) whether the earlier position was accepted by the court, because if it was not, there is no risk of inconsistent holdings; and (3) whether the party seeking to maintain an inconsistent position would garner an unfair advantage or impose an unfair detriment on the opposing party. *Id.* at 750-51. [11]

Defendants previously argued that the "direct overlap of the direct and derivative claims renders the derivative claims superfluous" and stated that the "true dispute in this case is among the three members of the Company." *See* Defendants' Memorandum in Opposition to Plaintiff's Motion to Reurge its Motion to Disqualify Counsel. Defendants successfully used these arguments to convince the District Court to dismiss Kira's derivative claims against SAB. *See* Memorandum Opinion and Order (Clerk's Doc. No. 45). Maintenance and SAB are now asserting that Kira cannot sustain a breach of contract action because its damages are merely derivative.

Defendants are clearly attempting to maintain a position contrary to their previous one, in that they previously maintained that the Company has no interest in this lawsuit and if there were any damages associated with this lawsuit, they would flow directly to the three members, and now they assert that Kira cannot establish any direct damages. Thus, the first factor of judicial estoppel is satisfied. Additionally, the Defendant's position was clearly accepted by the District Court since a number of Kira's derivative claims were dismissed as a result of Defendant's position. As for the

---

[11]The Fifth Circuit primarily applies the first two factors, but notes that the Supreme Court applies all three. *Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 399 (5th Cir. 2003). The Fifth Circuit maintains that the purpose of the doctrine of judicial estoppel is to protect the integrity of the judicial system rather than the litigants. *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999).

third element, while the Fifth Circuit does not give as much weight to it as the Supreme Court does, Kira would clearly be disadvantaged if Defendants were allowed to use one position to defeat a number of Kira's derivative claims and then use the opposite argument to defeat Kira's breach of contract claim. Accordingly, Defendants are judicially estopped from arguing that Kira can only establish derivative damages, and this portion of the Defendants' summary judgment arguments should be rejected.

### d.    Damages

Kira argues that summary judgment should not be granted because there are genuine issues of material fact regarding the extent of damages it suffered as a result of Maintenance and SAB's actions. Kira asserts that it is entitled to 10% of the Company's profits under the Operating Agreement. Kira alleges some of the damages it suffered stem from the fact that Maintenance and SAB wrongfully took approximately $2,636,444 of the Company's gross revenues as management fees. Kira also asserts that it has suffered damages because Maintenance and SAB used the Company's goodwill, mark, and employees to obtain projects. Kira alleges that these projects resulted in at least $2 million in profits.[12]

With regard to management fees, Maintenance and SAB argue that Kira cannot establish any direct damages because Champions and SAB were clearly entitled to compensation and Kira does not allege that the percentage used to award management fees was unfair. Maintenance and SAB allege that the services provided by Champions and SAB helped the Company earn incentive fees, which improved the bottom line. Therefore, they argue that Kira cannot establish any damages proximately caused by the breach. Maintenance and SAB state that the only way there can be any

---

[12]Because the Court recommends that Kira's breach of contract claim for use of Company assets be dismissed, these damages are no longer at issue for the breach of contract claim.

damages is if the amount paid was too high, because the services provided by Champions would have had to have been done by someone, and paid for by the Company. Maintenance and SAB also assert that there is no evidence that use of the name All Star Management and its employees caused any damage to Kira. They argue that there is no evidence that use of the name or employees gave Management-Delaware an advantage it would not otherwise have had.

In response, Kira offers the declaration of William Lawrence, who states that the payment of $2,636,444.00 in management fees reduced Kira's percentage of the profits from the project from the 10% it was supposed to receive to 2.4%. *See* Plaintiff's Response to Defendants' Motion for Summary Judgment, Exhibit B. Mr. Lawrence also states that he calculated the profits related to the alleged breach of the contract to be more than $2 million with an estimate of $2.8 million in future profits. *Id.* Kira, therefore, is alleging that 10% of these profits should be Kira's.

There is plainly a factual dispute regarding the damages, if any, suffered by Kira as a result of the payments made to Champions. For example, even accepting the Defendants' argument that the services provided by Champions had to be paid for by the Company whether provided by Champions or some other entity, if Champions was paid an above-market rate, then Kira will be able to demonstrate damages. This fact dispute precludes summary judgment on Kira's contract damages.

### 2. Breach of Implied Covenant of Good Faith and Fair Dealing

Maintenance and SAB assert that Kira cannot show a breach of the implied covenant of good faith and fair dealing because their actions are consistent with the members' justified expectations under the Operating Agreement. In response, Kira argues that Maintenance and SAB did breach their duty of good faith and fair dealing by purposefully reducing Kira's profits, operating a competing company with the same name, and using the Company's assets and employees to work for other companies.

24

It is well settled law in Nevada that every contract imposes a duty of good faith and fair dealing.[13]  *State, Univ. and Cmty. Coll. Sys. v. Sutton*, 103 P.3d 8, 19 (Nev. 2004) (citing *Hilton Hotels v. Butch Lewis Prods.*, 862 P.2d 1207, 1209 (Nev. 1993)).  If a party performs a contract in a manner that is "unfaithful to the purpose of the contract and justified expectations of the other party are thus denied," that party has breached the implied covenant.  *Hilton Hotels Corp. v. Butch Lewis Prods.*, 808 P.2d 919, 923 (Nev. 1991).  Since the Court cannot determine whether or not Maintenance and SAB breached section 6.6.3, and there are material facts in dispute, the Court cannot come to a conclusion regarding whether or not there was a breach of the implied covenant of good faith and fair dealing.  Thus, Defendant's motion should be denied regarding this claim.

### 3.     Breach of Fiduciary Duty

Maintenance and SAB assert that this claim should be dismissed because there is no fiduciary duty created by the Operating Agreement or the law, and even if the Court finds such a duty, they did not breach that duty.  In response, Kira argues that Maintenance and SAB had a fiduciary duty because of Kira's dependence on them, Maintenance and SAB's exercise of control over the Company, and because the Company is a closely-held corporation.

A breach of fiduciary duty is established if (1) a fiduciary duty exists; (2) that duty was breached; and (3) there were damages proximately caused by the breach.  *Cascade Invs., Inc. v. Bank of Am.*, No. CV-N-99-559-ECR(RAM), 2000 WL 1842945, at *2 (D. Nev. 2000).  Defendants contend that the Operating Agreement defines all duties owed by and between the parties, with the primary duty being that imposed on the Manager by section 7.6:

---

[13]Although the parties did not mention it, the implied covenant can result in a tort or contract action. *Hilton Hotels Corp. v. Butch Lewis Prods.*, 808 P.2d 919, 922-23 (Nev. 1991).  To establish the tort, the plaintiff must show there was a special element of reliance or fiduciary duty present. *Id.* at 923.

> The Manager's duty of care in the discharge of the Manager's duties to the Company and its Members is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct or a knowing violation of the law.

Relying on sections 6.6.1 and 15.1 of the Operating Agreement, Defendants also contend that the parties disavowed all fiduciary duties between them. However, as Kira points out, section 6.6.1 only disavows the business opportunity rule, and not all aspects of the duties encompassed within the concept of a party's fiduciary duty. And section 15.1 merely states that the parties' business entity is not a partnership, not that the parties disavow all fiduciary duties arising under Nevada law. Similarly, Defendants read too much into section 7.6. A fiduciary duty includes both a duty of care and a duty of loyalty. *In re Western World Funding, Inc.*, 52 B.R. 743, 763 (Bankr. D. Nev. 1985). Section 7.6 purports only to define the extent of the Manager's duty of care, and says nothing about its duty of loyalty to other members. Moreover, intentionally paying an affiliate fees not permitted by the Operating Agreement may well fall within the scope of "intentional misconduct," something prohibited by section 7.6. Because the Operating Agreement does not disavow all potential fiduciary duties, and since there are genuine issues of material fact regarding the facts on this issue, summary judgment should be denied on this claim.

## 4.    Civil Conspiracy

Maintenance and SAB assert that Kira's claim of civil conspiracy fails as a matter of law because if they did have a fiduciary duty to Kira, SAB and Maintenance did not breach their limited duty of care. Kira disputes this.

Civil conspiracy is "a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." *Sutherland v. Gross*, 772 P.2d 1287, 1290 (Nev. 1989). However, because

there are genuine issues of material fact regarding Maintenance and SAB's actions, summary judgment cannot be granted on this claim.

### E.   Derivative Claims Against Maintenance

As Maintenance notes, Kira's complaint includes several derivative claims on behalf of the Company, complaining that Maintenance's actions damaged the Company. The facts underlying these claims are the same as those supporting Kira's direct claims against the Defendants.

### 1.   Breach of Fiduciary Duty

Maintenance argues that it did not owe the Company a fiduciary duty since the Operating Agreement clearly delineates the manager's duties. As already noted, a fiduciary duty imposes both a duty of care, and a duty of loyalty. Section 7.6 sets the parameters on Maintenance's duty of care to the Company as manager. It is silent about its duty of loyalty to the Company. The Court therefore rejects Maintenance's argument that it did not owe the Company any fiduciary duty simply because its duty of care to the company is limited by section 7.6. Summary judgment should therefore be denied on this claim.

### 2.   Gross Negligence, Mismanagement, and Waste of Corporate Assets

Kira complains that Maintenance's actions amounted to gross negligence, mismanagement and waste of corporate assets. Maintenance contends that the record does not support a finding of any such conduct. Nevada courts have defined gross negligence to be a "manifestly smaller amount of watchfulness and circumspection than the circumstances require of a prudent man. But if falls short of being such reckless disregard of probable consequences as is equivalent to a wilful and intentional wrong." Since there are material facts in dispute, the Court cannot determine whether or not Maintenance's actions amounted to gross negligence at the summary judgment stage, and this must remain an issue for trial. Although Maintenance argues that summary judgment should be

granted on this claim, it offers no legal definition or standard for "mismanagement." Regardless, the facts regarding Maintenance's conduct are in dispute, so there are genuine issues of material fact, and, as a result, summary judgment must be denied on this claim.

With regard to waste of corporate assets, Maintenance relies upon a Kansas case to support its definition of waste of corporate assets with no explanation as to why this law would apply. Kira did not respond to Maintenance's assertion that summary judgment should be granted on its claim of waste of corporate assets and its Third Amended Complaint does not provide a definition or standard for waste of corporate assets.[14] The Court notes that only two Nevada state cases even mention waste of corporate assets, and neither of those cases provides a definition. The Court also could not find a satisfactory definition out of the Ninth Circuit. However, given the general concept of waste of corporate assets, the Court cannot recommend that the District Court grant summary judgment on this claim since the facts are in dispute regarding whether the transactions challenged by Kira were arms length, why Champions and SAB were paid the percentage they were paid, and exactly what services they provided. Accordingly, the Court recommends that Maintenance's summary judgment motion be denied as to these claims.

### 3. Lanham Act

Maintenance asserts that it did not violate the Lanham Act when it helped form Management because Junge owns the "All Star Management" mark and the Company had a non-exclusive license, Actus Lend Lease knew that Kira was not a member of Management, and because the name had changed before any contracts were entered into. In response, Kira argues that there are issues of material fact regarding whether or not the use of the mark created a likelihood of confusion and there

---

[14]Kira merely stated that it was bringing the claims pursuant to Nev. Rev. Stat. §§ 86.483 - 86.489, which authorize a member of a limited liability company to bring derivative claims.

is no proof that a license ever existed.  Maintenance replies that since it is the owner's use of the trademark that is being complained about, the traditional analysis does not apply and there is no requirement that a license be in writing.

"The Lanham Act was intended to make actionable the deceptive and misleading use of marks and to protect persons engaged in commerce against unfair competition." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767-68 (1992) (internal quotation marks omitted).  The Act protects registered marks as well as qualifying unregistered trademarks.  *Id*. at 768.  The Act also offers trade dress protection.  *See Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 354 (5th Cir. 2002), *cert. denied*, 537 U.S. 1071 (2002).  "The purpose of trade dress protection, like trademark protection, is to secure the owner of the trade dress the goodwill of his business and to protect the ability of consumers to distinguish among competing products." *Id*. at 355.  Thus, section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a), creates a federal cause of action for trademark and trade dress infringement regardless of whether the infringement is labeled "false designation of origin" or "false description or representation." *Two Pesos*, 505 U.S. at 780 (Stevens, J., concurring).

To prove that trade dress or trade mark infringement has occurred, a party must show: (1) that the mark or trade dress qualifies for protection, and (2) that the opposing party's use of the mark or trade dress creates a likelihood of confusion in the minds of potential consumers.  *Pebble Beach Co. Tour 18 I Ltd.*, 155 F.3d 526, 536 (5th Cir. 1998), *abrogated on other grounds by*, *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32-33 (2001).  The party must also show that its trade dress is nonfunctional, distinctive, and has acquired a secondary meaning.  *Engineering Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1350 (5th Cir. 1994).   The functionality,

distinctiveness, and secondary meaning of a mark or trade dress, as well as the existence of a likelihood of confusion, are all questions of fact. *Pebble Beach*, 155 F.3d at 537.

The purpose of trademark law is to protect the consumers from confusion about the source of the product and the trademark owners' investment of goodwill in their marks, not to protect licensees. *ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 445 F.3d 841, 846 (5th Cir. 2006). In *ICEE*, the Fifth Circuit held that the rights of a licensee are derivative of those of the owner of the mark, and because the owner of a trademark does not have a cause of action against another licensee, whose use of the trademark the owner permitted, neither does a licensee have such a claim. *Id.* Even if a subsequent licensee breaches a previous licensee's contractual rights, there is no trademark infringement if the mark is being used in accordance with the owner's approval. *Id.* at 846-47. If a licensee does have a claim in this situation it sounds in breach of contract. *Id.* at 847. Although no court in the Fifth Circuit has applied the holding of *ICEE* to an unfair competition claim under 15 U.S.C. § 1125(a) between two licensees, courts in New York and Illinois have held that a licensee does not have an unfair competition claim against another licensee where both have been licensed to use the name in question. *MJ & Partners Rest. Ltd. P'ship v. Zadikoff*, 10 F.Supp.2d 922, 927-29 (N.D. Ill. 1998).

Kira asserts there is no evidence of a license because no license was included in the summary judgment evidence and Bland, the President of SAB, testified that he had never negotiated a licensing agreement for the use of the "All Star" or "All Star Management" mark. However, the course of conduct between the owner and an accused infringer can create an implied license. *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1076 (5th Cir. 1997). To determine whether an implied license has been created, one must determine if the person is engaging in acts that would be infringing the trademark without an implied license. *Id.* When the LLC was using the name All Star

Management Delaware, it would have clearly been a trademark infringement if the LLC used the mark without approval from Junge. There is no dispute that Junge gave Management-Delaware permission to use the mark. Thus, no reasonable juror would find that Management was using the All Star Management mark without an informal license.

Defendants' motion for summary judgment should therefore be granted as to the Lanham Act claims.[15]

## F.      Rule 56(f)

Kira argues, in the alternative, that Maintenance and SAB's Motion for Summary Judgment should be denied pursuant to Rule 56(f) so that additional discovery can be conducted, because Kira alleges that Defendants have prevented Kira from obtaining relevant discovery. Defendants argue that Kira has not exercised due diligence. In its reply, Kira asserts that before the Court takes any action on Defendants' Motion for Summary Judgment, Defendants should be required to fully respond to any outstanding discovery requests and Kira should be allowed to supplement its response.

Rule 56(f) provides:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a

---

[15]Although Kira argues that Defendants' Motion for Summary Judgment does not cover its unfair competition claim as it relates to use of the Company's assets and employees, that claim does not appear to be cognizable under the Lanham Act. The Court's recommendation regarding the use of the mark also results in Kira not having a claim under the Lanham Act since the claim would still be a licensee bringing a claim against another authorized licensee. Likewise, if Kira does not have a claim under the Lanham Act, it also does not have a claim pursuant to common law unfair competition. *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002); *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994). Thus, Defendants' motion for summary judgment should also be granted in relation to the common law unfair competition claim.

> continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

FED. R. CIV. P. 56(f).  To preserve a complaint of inadequate opportunity to conduct discovery, the party opposing a motion for summary judgment must file a motion and non-evidentiary affidavits pursuant to Rule 56(f), explaining why the party cannot oppose the summary judgment on the merits. *Robbins v. Amoco Prod. Co.*, 952 F.2d 901, 907 (5th Cir. 1992).  To obtain the protection of Rule 56(f), the party opposing summary judgment must present specific facts explaining the inability to make a substantive response without the discovery . *Id.  See also Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 756 (5th Cir. 2005).  Additionally the party must have exercised due diligence in discovery to be granted relief under Rule 56(f).  *Id.*

Kira states it needs to depose three employees of Champions who supposedly worked for the Company.  Kira also alleges that Defendants have refused to produce documents: (1) showing the services rendered by SAB or Champions; (2) showing the time for employees of Champions and SAB; (3) that mention the Company or its success at Fort Hood; and (4) project level financial data for all of Management-Delaware and Killeen All Star Construction projects.  Kira states that these documents could show additional fact issues that would preclude summary judgment.

Defendants state that one of the witnesses Kira seeks to depose was identified in their initial disclosures on August 16, 2004, and all three were identified in discovery responses on March 6, 2006.  Kira argues that it requested depositions of these witnesses in a letter dated April 24, 2006. However, Defendants claim they did not know of a letter until a telephone discovery conference on May 4, 2006.  Defendants state they explained that they had not seen the letter and asked for it to be re-sent, but it was not.  Kira has not served a notice of deposition or subpoena for any of the three witnesses.  On other hand, Kira stated that it re-requested the depositions at the telephone

conference, but Defendants have not provided any deposition dates. Regardless, Kira has never noticed the depositions as provided for in the Federal Rules.

Defendants argue that the Kira does not offer any specific averments as to how the aforementioned discovery would solve the legal deficiencies noted by Defendants. Defendants assert that the first two categories of documents would not create an issue of material fact because the unreasonableness of the fees was not pled. Defendants argue in response to the third category that Kira has not explained how the documents are relevant or how they create a genuine issue of material fact, and they state that they already produced all the proposals within the agreed upon scope. Defendants also state that they have already produced the fourth category of documents. In its reply, Kira states that it never gave up the opportunity to request other related documents and Defendants have not produced marketing documents.

As mentioned *supra*, Kira has not pled the management fees were unreasonable, so the first two categories of documents do not justify relief under Rule 56(f). Additionally, the Court is not recommending that the District Court grant Defendant's Motion for Summary Judgment on the claims where facts regarding the negotiations which led to the creation of Management-Delaware, work performed by SAB or Champions at Fort Hood, or projects performed by Management-Delaware would be material. Since Kira's arguments appear to relate only to facts not material to the Court's rulings, Kira's rule 56(f) motion is without merit on these points.

As for any facts the Court has overlooked that relate solely to the claims which this Court is recommending be dismissed pursuant to Defendants' Motion for Summary Judgment, the Court notes that although the discovery period is still ongoing, the original deadline for discovery was extended by agreement from April 15, 2005, to August 1, 2006. *See* Scheduling Order (Clerk's Doc. No. 14) and Agreed Amended Scheduling Order (Clerk's Doc. No. 68). When Kira attempted to file

33

its Fourth Amended Complaint, the District Court denied the request, noting that Kira's actions gave "the Court pause about whether Kira had exercised due diligence during this action's extended discovery phase." (Clerk's Doc. No. 94).  Thus, given the length of time Kira has had for discovery, the fact that the District Court, who has dealt extensively with this case, questioned Kira's due diligence in discovery, and the fact that this case is set for trial in September with a pretrial conference on August  31, 2006, leads the Court to believe that allowing Kira more time for discovery to respond to Defendants' Motion for Summary judgment is not warranted.

For all of these reasons, Kira's motion pursuant to Rule 56(f) for additional time to respond to the Defendants' Motion for Summary Judgment is **HEREBY DENIED.**

### III.  RECOMMENDATION

Based on all of the above, the undersigned **RECOMMENDS** that the District Judge **GRANT IN PART and DENY IN PART** Defendants' Motion for Summary Judgment (Clerk's Doc. Nos. 97 & 98).  The Court **RECOMMENDS** that the motion be **GRANTED** as to:

(1)     the claim for breach of section 6.6.2;

(2)     the claim that payment to SAB of management fees breached the Operating Agreement; and

(3)     the Claim that Maintenance and SAB's use of the Company's assets breached the Operating Agreement.

As to all other aspects of the Motion, the undersigned **RECOMMENDS** that the Motion be **DENIED.**

With regard to Kira's Motion for Partial Summary Judgment (Clerk's Doc. No. 100), the undersigned **RECOMMENDS** that the motion be **DENIED.**

## IV.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation to the parties by certified mail, return receipt requested.

SIGNED this 31st day of July, 2006.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE